UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASMIN CORALIC,

    Plaintiff,

    v.                                        CASE NO. 8:13-CV-2678-T-30MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This is an action for review of the administrative denial of supplemental security income (SSI). *See* 42 U.S.C. § 1383(c)(3). Plaintiff contends that the Administrative Law Judge (ALJ) failed to properly (1) evaluate his attention and concentration difficulties; (2) weigh the opinion of a state agency psychological consultant; (3) formulate Plaintiff's residual functional capacity (RFC); and (4) support the conclusion that Plaintiff is capable of performing his past relevant work. Plaintiff also argues that the Appeals Council (AC) did not assign the appropriate weight to new evidence. After considering the parties' briefs and the administrative record, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

    *A.*    *Background*

    Plaintiff Jasmin Coralic was born on November 26, 1961, and was raised and educated in Bosnia until the twelfth grade. (R. 43) Plaintiff and his family immigrated to the United States over ten years ago as political refugees. Plaintiff alleges disability commencing December 18, 2009, due

to a stroke and heart disease. (R. 44)  After a hearing, the ALJ found Plaintiff had the severe impairments of "history of coronary artery disease status post bypass surgery." (R. 23) Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff was not disabled and retained the RFC to perform a full range of medium work. (R. 25)  The ALJ also found that, with this RFC, Plaintiff could perform his past relevant work as a gas station attendant, warehouse worker, window and screen assembler, pizza deliverer, and kitchen helper. (R. 31) The AC denied review.  Plaintiff, who has exhausted his administrative remedies, filed this action.

  B.  *Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that establish a "sequential evaluation process" to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4).  Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3)

whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    Discussion

        1.    *ALJ's consideration of Dr. Lodiero's opinion*

Plaintiff claims the ALJ improperly weighed the opinion of consultative psychological examiner Gabriela Lodeiro, Psy.D., who told the Commissioner during a telephone interview that Plaintiff had a hard time concentrating, appeared to have memory problems, and had difficulty

3

answering questions. The Commissioner responds that the ALJ properly characterized Dr. Lodeiro's findings regarding Plaintiff's mental limitations as "essentially benign." (R. 29) The Commissioner also points out that, even if Plaintiff's mental limitations are severe, there is no evidence regarding the duration of Plaintiff's mental condition (*i.e.*, that it is expected to last for a continuous period of at least 12 months. *See* C.F.R. §§ 416.909, 416.920(a)(4)(ii)).

On this point, Defendant prevails. To determine if an individual is disabled, the ALJ will weigh all available medical opinions and relevant evidence. 20 C.F.R. § 417.927. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialists physicians. 20 C.F.R. § 416.927. Further, "the ALJ is not required to give a[n] . . . opinion considerable weight if the [Plaintiff's] own testimony regarding her daily activities contradicts that opinion." *Leiter v. Comm'r Soc. Sec. Admin.*, 377 F. App'x 944, 949 (11th Cir. 2010). In any event, the ALJ must state the weight given to different medical opinions and the reasons for this weight. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted).

In January 2010, when Plaintiff first applied for disability benefits, he did not report any mental limitations or issues.[1] (R. 168) In August 2010, on a health history form Plaintiff completed for the Sarasota County Health Department during an office visit, he denied depression and other

---

[1] Plaintiff speaks little English. His wife, who is also not a native English speaker, translates for him and assisted him in filling out at least some of the agency forms.

4

mental or emotional disorders. (R. 328) But one month later, in his disability report for purposes of his administrative appeal, Plaintiff wrote: "I don't know in which category I need to put problems about my mental illness. Since everything happened with me I become angry very easy. Everything irritates me, like I feel my mood swings very often." (R. 196)

On November 17, 2010, Dr. Lodeiro performed a psychological evaluation of Plaintiff at the Commissioner's request. Plaintiff's wife served as interpreter. Through her, Plaintiff reported fighting in the Bosnian civil war for a total of four years and being held as a prisoner of war for two months during this time. (R. 351) He said he had never been treated by a mental health professional. (R. 352) Plaintiff felt "depressed, irritable, and worthless," and claimed he could not concentrate and had a decreased interest in socializing. (*Id.*) He said he was anxious, constantly worried, and was irritable. (*Id.*) According to Plaintiff, he had flashbacks to his persecution in Bosnia and frequent nightmares related to these incidents. (R. 354) He reported misplacing objects at home, forgetting what he is talking about in the middle of a conversation, and forgetting telephone numbers. (R. 354) Nonetheless, he denied periods of confusion and disorientation. (*Id.*)

Dr. Lodeiro described Plaintiff as pleasant and cooperative, "his thought processes appeared logical and coherent," his fine and gross motor skills appeared intact, his "speech was spontaneous and he elaborated on topics as requested," and he was "oriented to person, place, time, and current events." (R. 353) Plaintiff denied suicidal thoughts or delusion. (*Id.*) Dr. Lodiero diagnosed Plaintiff with depression, post traumatic stress disorder, and a cognitive disorder, not otherwise specified. (R. 354) She recommended that Plaintiff receive psychiatric treatment for his symptoms. Finally, Dr. Lodiero determined that if the agency awards Plaintiff benefits, he would need help in managing his funds. (R. 355)

5

Three weeks after Dr. Lodiero evaluated Plaintiff, the agency re-contacted her to "find out Dr. Lodiero's own objective findings regarding the claimant's attention, concentration and memory as well as why she feels he is not capable of managing his own funds." (R. 226) In the brief telephone conversation between the agency representative and Dr. Lodiero, Dr. Lodiero explained that her observations of Plaintiff were limited because of the language barrier. (*Id.*) But she recalled that Plaintiff's wife would sometimes have to repeat questions to Plaintiff. (*Id.*) It seemed to Dr. Lodiero that Plaintiff had a hard time concentrating: his wife would sometimes answer questions for him, and when Dr. Lodiero asked her to ask Plaintiff to answer himself, Plaintiff would try and then shake his head no. (*Id.*) Due to Plaintiff's apparent memory and concentration problems, Dr. Lodiero concluded Plaintiff could not manage his funds. (*Id.*)

The ALJ found that Plaintiff does not suffer from a severe mental impairment. (R. 29) In so finding, the ALJ did not specifically discuss the follow-up interview with Dr. Lodiero. However, and despite Plaintiff's suggestion otherwise, the ALJ was not required to do so. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Newberry v. Comm'r of Soc. Sec.*, 572 F. App'x 671, 672 (11th Cir. 2014) (citation and quotations omitted). Further, the ALJ was not bound to accept all of Dr. Lodiero's – or any other doctor's – findings regarding Plaintiff's functional limitations. *See* 20 C.F.R. § 416.946(c). This is especially so in this case because Dr. Lodiero was a non-examining state agency psychologist, not a treating source. *See* 20 C.F.R. § 416.927(e).

The ALJ characterized all of Dr. Lodiero's findings as "essentially benign." (R. 29) Although this characterization arguably oversimplifies the psychologist's more nuanced opinion, it appears supported by the weight of the evidence. In discussing concentration, persistence, and pace,

6

the ALJ considered Plaintiff's "subjective difficulties" in this area, as acknowledged by Dr. Lodiero, but emphasized that after meeting with Dr. Lodiero, Plaintiff did not seek treatment until July 2011 (seven months later), when he went to North Port Health Department psychiatric clinic upon the referral of his primary care physician.[2] (R. 390) Additionally, the ALJ relied on evidence of Plaintiff's daily activities: he drives daily, does housework, cooks, and occasionally visits friends and works in his wife's business. (R. 29) The ALJ's consideration of Dr. Lodiero's findings is not in error.

### 2. ALJ's consideration of Dr. Alvarez-Mullin's opinion

Next, Plaintiff challenges the ALJ's decision to assign only "some weight" to the opinion of state agency consultative psychiatrist Angeles Alvarez-Mullin, M.D. The Commissioner responds that the ALJ properly rejected a portion of Dr. Alvarez-Mullin's opinion because only mild concentration limitations are supported by the evidence.

Dr. Alvarez-Mullin completed a Psychiatric Review Technique form and a Mental RFC Assessment form in December 2010 (around the time of Dr. Lodiero's evaluation) and concluded Plaintiff has moderate limitations in several areas, including moderate difficulties in maintaining concentration, persistence, and pace. (R. 357-74) To begin, one aspect of Plaintiff's argument – that Dr. Lodiero's findings also support the limitations recognized by Dr. Alvarez-Mullin – is discussed above. In particular, Plaintiff's argument is unconvincing, because the ALJ properly considered Dr. Lodiero's opinions in concluding that Plaintiff does not suffer from a severe mental impairment.

---

[2] He was not treated at that time but returned in January and February 2012. (R. 417-22) This treatment is discussed below.

As for Dr. Alvarez-Mullin's specific findings, in his psychiatric review technique form, he determined Plaintiff had moderate limitations on his ability to maintain concentration, persistence, and pace, and mild limitations in his ability to maintain social functioning and perform the activities of daily living (ADLs). (R. 367) In the "Consultant's Notes" section of the form, Dr. Alvarez-Mullin observed that "[o]verall, it appears that [Plaintiff] has become depressed as result of health & situational factors." (R. 369) In his mental RFC assessment, Dr. Alvarez-Mullin opined Plaintiff had moderate limitations in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal work week without interruption from psychological symptoms; interact appropriately with the general public; respond to changes in the work setting; and set realistic goals or make plans independently of others. (R. 371-72) In his narrative regarding Plaintiff's functional capacity assessment, however, Dr. Alvarez Mullin notes Plaintiff "appears capable of understanding, remembering and carrying out simple instructions. His attention and concentration appear adequate as indicated by his ability to perform ADLs/housekeeping chores, driving, etc. . . . May have difficulty working with the public / [Plaintiff] does not speak English fluently." (R. 373)

The ALJ assigned these findings only "some weight," emphasizing Dr. Alvarez-Mullin's ultimate conclusion that Plaintiff's concentration and attention appear adequate in light of his ability to perform daily chores and to drive. (R. 31, 373) The ALJ stated: "[T]here is insufficient evidence of more than a mild limitation in concentration, persistence and pace, as previously discussed." (R. 31) Plaintiff takes issue with this sentence because the previous discussion the ALJ refers to is the discussion of Dr. Lodiero's findings, which Plaintiff argues is in error. But as I have explained, it is not. Further, although the ALJ is required to consider Dr. Alvarez-Mullin's opinions, they are not

those of a treating source; they are not entitled to great weight.  In any event, the ALJ was not required to discuss or assign weight to every aspect of Dr. Alvarez-Mullin's assessment.  *See Newberry*, 572 F. App'x 672 (citation omitted).

Plaintiff also argues that the ALJ should have given weight to Dr. Alvarez-Mullin's opinion that Plaintiff has a moderate limitation in his ability to interact with the general public.  Elsewhere, however, Dr. Alvarez-Mullin opined Plaintiff was, for the most part, only mildly limited in social functioning. (R. 371-73)  The ALJ emphasized Plaintiff's statements that he visited with friends on a monthly basis. (R. 208)  On a function report, Plaintiff also reported that he spends time with others and "very often" talks about his health issues. (R. 157) His childhood friend, also now living in the United States, completed a "Statement of Claimant or Other Person" form for the agency and indicated he sees Plaintiff every other weekend. (R. 252) And during the hearing, he testified that he wife "insists" that he visit with friends so he does. (R. 56) Based on this evidence, I find that ALJ's consideration of Dr. Alvarez-Mullin's opinion of Plaintiff's social limitations is not in error.

> 3. *Appeals Council's Consideration of New Evidence*

Next, Plaintiff asserts that the Appeals Council ("AC") erred when it declined review of the ALJ's decision, finding that new evidence – a medical source statement from Plaintiff's treating psychiatrist, Patricia Hough, M.D., Ph.D. – did not provide a basis for changing the ALJ's decision. The Commissioner argues that Dr. Hough's letter was neither new nor material and did not compel remand.

> If a claimant submits new noncumulative and material evidence to the AC after the ALJ's decision, the AC shall consider such evidence, but only where it relates to the period on or before the date of the ALJ"s hearing decision. 20 C.F.R. § 404.970(b). "Material" evidence is evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v.*

9

> *Bowen*, 809 F.2d 763 (11th Cir. 1987). When evidence is submitted for the first time to the AC, that new evidence becomes part of the administrative record. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1067 (11th Cir. 1994). The AC considers the entire evidence, including the new, material, and chronologically relevant evidence, and will review the ALJ's decision if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §404.970(b). We review whether the new evidence renders the denial of benefits erroneous." *Ingram v. Comm. of Social Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007). "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error or law." *Keeton*, 21 F.3d at 1066.

*Smith v. Social Security Admin.*, 272 Fed.App'x 789, 800-01 (11th Cir. 2008) (*per curium*). Here, as in *Smith*, the AC considered Plaintiff's newly submitted evidence, but found the information did not provide a basis for changing the ALJ's decision. (R. 1-5) The AC specifically stated that it considered the reasons Plaintiff disagreed with the decision and the newly submitted evidence (R. 1). And, as in *Smith*, the AC properly declined to review the ALJ's decision in light of the evidence submitted because the evidence was neither new or material. *Smith,* 272 F. App'x at 801 (citation omitted). Although the AC is required to consider new evidence, it is not required to explain its decision when denying review, as neither the regulations nor the Eleventh Circuit demands this. *See* 20 C.F.R. §§ 416.1467, 416.1470; *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("because a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review.").[3]

---

[3] Plaintiff cites *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011), in support of his argument that the AC must show in its written denial that it adequately evaluated the new evidence, rather than "perfunctorily adher[ed]" to the ALJ's decision. In *Flowers*, however, the Eleventh Circuit concluded the AC did not adequately consider the new evidence because "there is a reasonable possibility that [the claimant's] new evidence would change the ALJ's decision." *Id*. There is no such reasonable possibility here, as discussed below.

10

Dr. Hough's assessment does not meet the standard for remand. As background, during the relevant period, Plaintiff sought treatment from Dr. Hough twice (in February and March 2012). During their initial meeting, Dr. Hough reported Plaintiff smiled, had a pleasant demeanor, but had very limited English language skills. (R. 419) She noted he "seemed perplexed at times" (*Id.*) but was pleasant, oriented to person, place, and time with adequate memory recall. (R. 420) She characterized him as a fair historian. (*Id.*) After this initial meeting, Dr. Hough assessed that Plaintiff had mood swings, flashbacks, depression, and decreased energy and was unable to work. (*Id.*) Dr. Hough prescribed Trazodone for sleep.

During their second meeting, in March 2012, Dr. Hough indicated Plaintiff was sleeping slightly better on Trazodone. (R. 417) She prescribed daily exercise and increased Plaintiff's dosage of Citalopram (an anti-depressant). Then, in April 2012, Dr. Hough completed a medical source statement at Plaintiff's request. (R. 423-24) On the check-the-box form, Dr. Hough opined Plaintiff had marked difficulties in his ability to: concentrate, interact with the public, maintain socially appropriate behavior, and maintain punctuality. According to Dr. Hough, he had extreme difficulties in his ability to: complete a work day without interruptions from psychological symptoms, perform simple tasks, and respond appropriately to changes in a work setting. (R. 423) In spite of Dr. Hough's observations one month earlier that Plaintiff had a supportive family and stable home life, Dr. Hough reported that Plaintiff's mood swings were causing domestic discord. (R. 424) The ALJ assigned Dr. Hough's opinions no weight, citing the psychiatrist's limited treatment history with Plaintiff, her lack of clinical findings to support such severe limitations, her inconsistent observations about his family life (especially because Plaintiff denied problems getting along with

family), and the lack of evidence that Plaintiff's condition (even if severe) would continue for 12 consecutive months.

In response, Dr. Hough completed her three-page medical source statement on June 19, 2012, a month after the date of the ALJ's decision. (R. 432-34) Dr. Hough details not only her treatment of Plaintiff but what she learned from his wife about his time as a prisoner of war. The letter is a gripping plea on Plaintiff's behalf, but in the end it is cumulative of Dr. Hough's treatment records. As explained above, the ALJ reviewed and rejected Dr. Hough's findings, a determination Plaintiff does not challenge. Also, although Dr. Hough's letter explains that her office is to blame for Plaintiff's delay in receiving psychiatric treatment, this delay was only one factor the ALJ considered (and, what is more, Dr. Hough's statements do not explain Plaintiff's delay in seeking mental health treatment prior to July 2011). Consequently, I find that the AC did not err by refusing to remand to the ALJ after considering the "new evidence." There is no reasonable possibility that the "new evidence" would have changed the administrative result.

    4.  *Plaintiff's RFC*

Under a single heading, Plaintiff argues: (1) the ALJ's RFC is not supported by substantial evidence, because the ALJ ignored evidence of Plaintiff's limitations; (2) the ALJ improperly rejected treating nurse practitioner Christina Bradley's opinion; and (3) the ALJ improperly rejected the opinion of state agency medical consultant Edmund Molis, M.D. The Commissioner responds that the objective medical evidence, together with Plaintiff's daily activities, support the RFC of a full range of medium work.

The relevant focus for the ALJ in determining a claimant's RFC is a consideration of all impairments and the extent to which the impairments are consistent with medical evidence. 20

C.F.R. § 416.945. The ALJ must also consider any medical opinions given by physicians, psychologists or other acceptable medical sources, which indicate the nature of a person's impairments. *Id*. The RFC determination is ultimately reserved for the ALJ. 20 C.F.R. § 416.946(c).

Plaintiff suffered a stroke and had heart bypass surgery in December 2009. He was discharged from the hospital at the end of that month with numerous prescriptions and directions on home health care and home physical therapy. (R. 279-80) While he was in the hospital, his treating cardiologist, Jonathan Fong, M.D., completed a Disability Evaluation Relative to Employment, indicating Plaintiff would be disabled for 12 months following heart surgery. (R. 275) Chest x-rays taken in January 2010 indicate an "excellent postoperative appearance." (R. 277)

In April 2010, Plaintiff began treatment at the Sarasota County Health Department, primarily with nurse practitioner Christina Bradley. Plaintiff complained of gait problems and had a minimal facial droop on the left side. (R. 337) A month later, Plaintiff was taken to Sarasota Memorial Hospital's emergency room for chest pain, headaches, and stress. The ER records state: "Patient is moving all extremities without difficulty. Patient has 5/5 grip strength in bilateral upper extremities. Is able to flex and extend all muscles in the bilateral upper and the bilateral lower extremities. The patient has good reflexes throughout the upper extremities and lower extremities." (R. 302) The record continues: "Sensory exam normal. Mental status intact. Oriented times three." (*Id*.) On re-examination, he was "feeling much better and is asymptomatic." (*Id*.) He was discharged with instructions to return if his symptoms worsened. (*Id*.)

Plaintiff was examined by consultative neurologist Robert Shefsky, M.D. in July 2010. (R. 312-15) Dr. Shefsky reported Plaintiff's gait was normal, but he could not walk on heels and toes

13

without difficulty, and his tandem walk was not normal. Despite this, he did not use an assistive device and did not need help getting off the exam table or changing for the exam. According to Dr. Shefsky, Plaintiff made good eye contact. This is the extent of his mental status examination, however, because of the language barrier. Physically, Plaintiff had 5/5 strength in his upper and lower extremities with no muscle atrophy and normal muscle tone. Plaintiff's prognosis was "fair." (R. 314)

A cerebrovascular duplex scan in July 2011, showed stenosis that was "not hemodynamically significant." (R. 385) In September 2011, Plaintiff had his annual exam at Sarasota Memorial Hospital. (R. 378) His main complaints were occasional dizzy spells and left foot numbness. (*Id*.) The physician findings were all within normal limits on physical examination, but he noted that Plaintiff described himself as "sedentary." (*Id*.) A treatment note from the Sarasota County Health Department in December 2011 indicates Plaintiff saw a cardiologist and the results were within normal limits. (R. 386) In determining that Plaintiff retained the RFC to perform a full range of medium work, the ALJ highlighted these records as well as Plaintiff's daily activities ("[H]e is functional in that he drives independently on a daily basis, performs housework, cooks, and, at least at some times, continues to work in his wife's business." (R. 29)). The ALJ recognized that Plaintiff did have limitations related to his impairments, but they were not of disabling severity. (R. 31)

Within his challenge to the ALJ's RFC determination, Plaintiff claims the ALJ improperly rejected Ms. Bradley's treatment records. Ms. Bradley noted Plaintiff had "psychomotor slowing" (R. 390) and residual balance problems from his stroke, among other findings. (R. 386) In December 2011, after having treated Plaintiff since April 2010, Ms. Bradley completed a medical source statement indicating Plaintiff would have difficulty with prolonged standing and walking during a

14

six to eight hour workday and would have difficulty carrying and lifting 10 pounds for up to five and a half hours and 20 pounds for up to two and a half hours a day. (R. 416) Ms. Bradley continued that Plaintiff had a limited tolerance for most activities, impaired balance, and short and long term memory impairment. (*Id.*)

A nurse practitioner is not an "acceptable medical source" for purposes of establishing an impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). However, a nurse practitioner is an "other" medical source used "to show the severity of impairments and how the impairments affect ability to work. 20 C.F.R. §404.1513(d)(1). Opinions from nurse practitioners are "important and should be evaluated on key issues such as impairment severity and functional effects." *See* SSR 06-03p (Aug. 9, 2006). Specifically, SSR 06-03p, clarifying existing SSA policies, provides:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licenced clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources .... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p. The ruling further directs the ALJ to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.*

The ALJ evaluated Ms. Bradley's opinions in detail, emphasizing that she was Plaintiff's primary treating source. (R. 29) Because the ALJ evaluated Ms. Bradley's treatment notes and opinions together with the rest of the medical evidence, and then assigned them little weight, I find no error. *See e.g. Gray v. Astrue,* 2012 WL 7170492, *8 (M.D. Fla. Nov. 9, 2012) (ALJ did not err

15

in considering nurse practitioner's opinions where ALJ appropriately considered the nurse practitioner's opinion evidence along with other evidence under considerations listed by regulations at 20 C.F.R. §§ 404.1527 and 416.927). In assigning Ms. Bradley's December 2011 medical source opinion "little weight," the ALJ concluded it was not consistent with the medical evidence (summarized above) or with Plaintiff's activities. (R. 29)  Regarding Ms. Bradley's opinion that Plaintiff has a memory impairment, the ALJ pointed out that Dr. Hough characterized Plaintiff as a fair historian with adequate recall. (*Id.*)

Finally, Plaintiff argues the ALJ improperly rejected the opinion of state agency medical consultant Edmund Molis, M.D., who opined in November 2010 that Plaintiff was limited to light work. (R. 343-50)  The ALJ rejected this RFC assessment in favor of a full range of medium work. As stated above, the RFC determination is reserved for the ALJ.  After considering the medical evidence, including the records summarized here that indicate Plaintiff's improvement since November 2010, the ALJ rejected Dr. Molis's assessment. (R. 30)  I find no error in this.

### 5.   *Past Relevant Work*

As his final argument, Plaintiff contends that ALJ erred at step four in the sequential evaluation process by finding Plaintiff capable of performing his past relevant work.  In particular, Plaintiff contends he did not make enough as a pizza deliverer and kitchen helper for these jobs to constitute past relevant work; the job of window and screen assembler requires concentration and memory skills Plaintiff lacks; there is no wage information regarding his gas station attendant job in Bosnia; and he cannot perform the job of warehouse worker because it requires seven hours of walking and/or standing and English skills.

What Plaintiff does not mention is that the ALJ made an alternative finding at the fifth step of the sequential evaluation process that Plaintiff could perform other work in the national economy (as testified to by the VE (R. 58-59)), even if he cannot perform his past relevant work. (R. 32) The existence of such jobs, taken together with a RFC finding for medium work, directs a finding of "not disabled." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00, Table 3, Rule 203.19 (referencing a person closely approaching advanced age, with limited or less education, whose previous work experience was skilled or semi-skilled, and those skills are not transferable). Therefore, any error of the ALJ at step four is harmless.

D.   *Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1.   The decision of the Commissioner be AFFIRMED and judgment be entered in favor of the Commissioner.

IT IS SO REPORTED in Tampa, Florida on October 28, 2014.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).